NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                               :

JUDE STOLTE,                   :

                               :

         Plaintiff,          :             **Hon. Dennis M. Cavanaugh**

                               :

         v.                   :                 **OPINION**

MICHAEL J. ASTRUE,      :

COMMISSIONER OF         :       Civil Action No. 09-CV-4741 (DMC)

SOCIAL SECURITY,        :

                               :

         Defendant.       :

_____ :

DENNIS M. CAVANAUGH, U.S.D.J.

         This matter comes before the Court upon Jude Stolte's ("Plaintiff") appeal from the

Commissioner of Social Security's ("Commissioner") final decision denying Plaintiff's request for

Supplemental Security Income ("SSI") benefits under Title II of the Social Security Act (the "Act").

This Court has jurisdiction to hear Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

No oral argument was heard pursuant to Rule 78(b) of the Federal Rules of Civil Procedure.

         For the reasons set forth below, the final decision of the Commissioner is **affirmed**.

## I. BACKGROUND

### A. Procedural History

         On December 1, 2000, Plaintiff applied for disability benefits under Title II of the Act.

Administrative Record ("Tr.") at 71-73. Plaintiff alleged that she became disabled on May 13, 1996

and suffered from kidney pains, shortness of breath, coughing, watery eyes, and a swollen tongue.

Tr. 71-73.  The Social Security Administration denied Plaintiff's application on March 26, 2001.

Tr. 27-32.   On June 18, 2001, Plaintiff requested reconsideration of her application and, on

September 1, 2001, the Social Security Administration again denied Plaintiff's application.  Tr. 40.

Plaintiff once again applied for benefits under the Act on May 20, 2004.  Plaintiff alleged that

she became disabled on January 1, 2000.[1]  Plaintiff's application was denied on May 25, 2005 and

a request for reconsideration was filed.  Tr. 39.  The Social Security Administration again denied this

request on June 24, 2005.  Tr. 47.  On July 7, 2005, Plaintiff applied for an Administrative Law

Judge ("ALJ") hearing.  Tr. 55.

A hearing was held before ALJ Joel H. Friedman on September 29, 2006.  Tr. 493.  After

listening to testimony and reviewing the record, ALJ Friedman concluded that Plaintiff was not

entitled to SSI benefits under the Act.  Tr. 12.  On July 16, 2007, Plaintiff requested review of this

decision by the Appeals Council.  Tr. 487-92.  Two year later, on July 17, 2009, the Appeals Council

denied Plaintiff's request and issued a final decision by the Commissioner.  Tr. 7.

**B.    Factual History**

1.    The Findings of the Administrative Law Judge

In denying Plaintiff's application for SSI benefits, ALJ Friedman made seven findings

regarding the Plaintiff's condition.  First, ALJ Friedman held that the claimant met the insured

requirements as required by the Act.  Tr. 17.  Second, since the alleged onset date of January 1, 2000,

---

[1]

 According to Plaintiff's brief, she recorded January 1, 2000 as the date that her condition became debilitating because she was employed prior to this date  Pl.'s Br. at 1-2 n.2.  However, counsel asserts that because Plaintiff's earning did not achieve SGA-level, she has an unbroken non-SGA period from May 3, 1996 to the present.  Pl.'s Br. at 2 n.3.  In light of this Court's finding that Plaintiff is not entitled to benefits, see infra Part IV, this Court need not address this argument.

the claimant did not engage in substantial gainful activity.  Tr. 17.  Third, the claimant suffered the following severe impairments: non-insulin-dependent diabetes mellitus, chronic obstructive pulmonary disease, morbid obesity, and vision impairment.  Tr. 17.  Fourth, ALJ Friedman found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the Listings.  Tr. 17-18.  Fifth, the claimant had the residual functional capacity ("RFC") to engage in light work activity.  Tr. 18-21.  Sixth, Plaintiff was capable of performing her past semi-skilled work as a legal secretary, which did not require the performance of work-related activities precluded by Plaintiff's RFC.  Tr. 21-22.  Seventh, the claimant was not disabled, as defined by the Act from January 1, 2000 through the date of the decision.  Tr. 22.  As a result, the ALJ denied Plaintiff's application for disability benefits.

### 2.      Plaintiff Jude Stolte and Her Husband's Testimony

At the ALJ hearing on September 29, 2006, Plaintiff testified that she graduated from high school and worked for Prudential Financial for eighteen and a half years.  Tr. 504.  While at Prudential, Plaintiff filed documents, answered phones, and performed bookkeeping responsibilities. Tr. 510.  She would sit for three to four hours during an eight-hour day.  Tr. 510-11.  Plaintiff occasionally performed heavy lifting.  Tr. 511.  While working at Prudential, Plaintiff completed some college-level communications courses.  Tr. 501.  Plaintiff lost her job with Prudential in 1996. Tr. 505.  Plaintiff testified that she would be unable to perform this job now because she cannot stand or sit for an extended period of time.  Tr. 511.

Additionally, in 1999, Plaintiff worked as a deli clerk at Foodtown Supermarket for three months.  Tr. 504.  There, Plaintiff spent a considerable amount of time standing and would often

3

have to sit because of the pain from standing.  Tr. 509.  Plaintiff testified that she would get pain up

and down her sides, where her kidneys are located.  Tr. 509.  Occasionally, Plaintiff had to lift meats

and other objects as part of her responsibilities.  Tr. 509.  After three months of work, Plaintiff lost

her job with Foodtown Supermarket.  Tr. 505.  Plaintiff has not been employed since she lost the job

at Foodtown.  Tr. 511-12.

With respect to her daily activities, Plaintiff lives in a walk-up apartment and has difficulty

climbing the full flight of stairs.  Tr. 501.  Plaintiff testified that she cannot walk half of a block

without falling and experiences pain from sitting too long.  Tr. 502, 514.  Additionally, Plaintiff has

difficulty with her grip, experiences numbness in the middle of her hands, and routinely drops

household objects.  Tr. 512-13.  Although Plaintiff does not wear glasses, she testified that she is

unable to read or see at a distance without difficulty.  Tr. 513.  Furthermore, Plaintiff often has to

use the restroom due to her kidney problems.  Tr. 515.  Plaintiff claims to be unable to lift more than

three pounds, or a gallon of milk, because she often loses her grip.  Tr. 516.  Plaintiff also complains

of bad headaches and sleeping problems.  Tr. 516.

Plaintiff is capable of performing some common tasks.  Plaintiff testified that she takes care

of her thirteen year old daughter on a daily basis.  Tr. 512-513.  She often cooks, Tr. 512, and does

laundry, Tr. 513.  Additionally, Plaintiff testified that she grocery shops but requires assistance in

doing so.  Tr. 514-15.

Plaintiff, who is five feet, one inch tall, weighed 268 pounds at the time of the hearing. Tr.

87, 501.  Plaintiff testified that her heaviest weight was 275 pounds.  Tr. 517.  However, counsel

referred to an October 20, 2004 entry from her treating physician's office, where she weighed 292

4

pounds.  Tr. 517.  At the date of the hearing, she was on six different medication for diabetes.  Tr. 501.  Later in Plaintiff's testimony, she claimed to receive Glucophage, Glucotrol, Actos, Synthroid, Capitan, Lotrel, Albuterol and Combivent.  Tr. 507.  Plaintiff used an inhaler and a machine for about three to four hours per night.  Tr. 508.  She did not have a nebulizer.  Tr. 508.  She had not visited an emergency room for her asthma within the preceding year.  Tr. 508.

Plaintiff's husband, Daryl Stolte, also testified at the September 29, 2006 hearing.  Tr. 518.  Mr. Stolte testified that Plaintiff's condition has progressively worsened.  Tr. 519.  She struggles to climb stairs, cannot maintain her breath while grocery shopping, and suffers from sleep apnea.  Tr. 519.  Mr. Stolte also claimed that his wife went downhill after contracting spinal meningitis in 1999.  Tr. 521.

### 3.    Plaintiff's Medical History

Plaintiff alleges she has been disabled since January 1, 2000, as a result of suffering from non-insulin dependent diabetes mellitus, chronic obstructive pulmonary disease, bilateral carpal tunnel syndrome, morbid obesity, and vision impairment.[2]  The Court briefly summarizes Plaintiff's voluminous medical history and the evidence pertaining to the alleged impairments below.

On July 17, 1999, Bayshore Community Hospital admitted Plaintiff for a fever and chills.  Tr. 194.  The hospital indicated on her medical report that Plaintiff had a history of thyroid, lung, and heart disease.  Tr. 195.  She was diagnosed with acute febrile illness and released.  Tr. 195.

---

[2]   In addition to these impairments, Plaintiff referred to a number of other ailments during the course of this litigation.  See, e.g., Tr. 218 ("[Ms. Stolte] states that her disability consists of thyroid disease, hypertension and dizziness.").  However, Plaintiff does not claim that the ALJ failed to consider additional impairments.  See generally Pl.'s Br.  Therefore, this Court only analyzes whether substantial evidence supports the ALJ's determination regarding the impairments expressly considered in the ALJ's decision.

Plaintiff's treating physician, Dr. Douglas Chudzik, contacted the Social Security Administration regarding Plaintiff's condition on January 11, 2001.  Tr. 210.  In his letter, Dr. Chudzik indicated that he had treated Plaintiff since 1992.  Tr. 210.  He last saw Plaintiff on September 2, 2000 for difficulty breathing.  Tr. 210.  Dr. Chudzik diagnosed her with acute bronchitis and placed her on a bronchodilator, namely Atrovent inhaler.  Tr. 210.  However, Dr. Chudzik declined to classify her as disabled because he did not "have enough evidence to certify Plaintiff's claims."  Tr. 210.

On March 3, 2001, Dr. Phillip Eatough examined Plaintiff and performed an x-ray, ECG, metabolic panel and CBC.  Tr. 218.  Dr. Eatough noted that Plaintiff had thyroid disease for approximately ten years and treated symptoms with Levoxyl.  Tr. 218.  Additionally, Plaintiff had only one working kidney for the past ten years.  Tr. 218.  She had taken hypertensive medicines and, at the time of the visit, received Zestoretic.  Tr. 218.  Plaintiff also complained of a chronic cough, which only produced a slight amount of sputum.  Tr. 218.  She used Atrovent and QID, as necessary.  Tr. 218.  At the time, Plaintiff weighed 270 pounds, had a regular pulse, and a blood pressure of 140/86 mmHg.  Tr. 219.  Dr. Eatough noted that Plaintiff suffered from morbid obesity with hypothyroidism, chronic bronchitis, and renal vascular hypertension.  Tr. 220.  He found her main limitation to be related to her obesity and possible secondary effects of the thyroid on her elevated heart rate.  Tr. 220.

On August 29, 2001, Dr. Sara Dhamija examined Plaintiff as a result of complaints of diabetes mellitus, hypertension, thyroid disease, and lower back pain. Tr. 206.  At that time, Plaintiff was five feet, one inch and weighed 252 pounds.  Tr. 206.  Plaintiff reported that she had lost forty-two pounds and gained the majority of the weight back.  Tr. 206.  Additionally, Plaintiff

reported occasional shortness of breath, migraines, numbness in her fingers, dizziness, and blurred

vision. Tr. 206. However, Plaintiff regularly exercised by walking one-half hour a day, took her

daughter to school, and volunteered at her daughter's school. Tr. 207. On examination, Dr. Dhamija

described Plaintiff as fully oriented and neurologically intact. Tr. 207. Plaintiff displayed an

imbalance of muscle effect in her right eye. Tr. 207. Plaintiff had full range of shoulder motion,

sensory function, and grip strength on her right side. Tr. 207. She had near full grip strength on her

left side. Tr. 207. Dr. Dhamija diagnosed Plaintiff with morbid obesity, diabetes, hypertension,

hypothyroidism, and congenital absence of the right kidney. Tr. 208.

Medical Consultant S. Lawrence completed a Physical Residual Functional Capacity

Assessment for Plaintiff on March 9, 2004. Tr. 223-28. Lawrence concluded that Plaintiff's visual

field displayed a marked degree of peripheral constriction. Tr. 224. She had full range of motion

in her knees and ankles, full strength in her extremities, full grip strength, and normal chest and

lungs. Tr. 224. After reviewing the medical file, Lawrence concluded that Plaintiff did not meet or

equal the Listings and was able to perform light work. Tr. 227. Lawrence indicated that Plaintiff's

complaints regarding vision difficulties were credible, but her allegations regarding an inability to

sit or stand for an extended period of time were not. Tr. 227.

On November 3, 2004, Dr. Justin Fernando submitted an Internal Medical Examination on

behalf of Plaintiff. Tr. 229. Plaintiff exhibited 20/100 vision, normal gait, and full grip strength.

Tr. 230-31. At the time, Plaintiff weighed 283 pounds and had a blood pressure of 180/110. Tr.

230. Dr. Fernando diagnosed Plaintiff with diabetes, congenital absence of one kidney, exertional

dyspnia, and obesity. Tr. 232. He also found that Plaintiff had a mild to moderate limitation in

standing and walking, which limited her capacity for physical work likely due to her obesity. Tr.

7

232.  Additionally, Plaintiff displayed a moderate to marked limitation in her ability to see in both eyes.  Tr. 232.  Dr. Fernando recommended that Plaintiff visit an ophthalmologist for her vision impairment and a physician for her hypertension.  Tr. 232.

On February 17, 2005, Dr. Bruce Berg, an ophthalmologist, examined Plaintiff.  Tr. 242-43.  Plaintiff exhibited 20/25 vision in the right eye and 20/30 vision in the left eye.  Tr. 242.  While Plaintiff had full ocular rotations in the left eye, the eye was significantly exotropic.  Tr. 242.  Visual testing displayed a marked degree of peripheral constriction in each eye.  Tr. 243.  While Plaintiff had limited difficulty in the hemianopic field of the right eye and a small degree in the left superior quadrant of the left eye, Dr. Berg found no visible ophthalmic basis for this problem.  Tr. 243.  Dr. Berg suggested that it might be useful for Plaintiff to undergo a neurological exam and obtain reading glasses.  Tr. 243.  Dr. Berg concluded that no ocular therapy was necessary and that annual reevaluations would be sufficient.  Tr. 243.

Bayshore Community Hospital admitted Plaintiff for a toothache, gum pain, and facial swelling on April 10, 2005.  Tr. 326.  She was administered Levaquin and Percocet.  Tr. 326.  Plaintiff was treated with a nebulizer and released.  Tr. 327.

On April 26, 2005, Plaintiff again visited Bayshore Community Hospital.  Tr. 250.  Plaintiff complained of shortness of breath and neuropathy for two years.  Tr. 250.  The examining physician indicated that Plaintiff was fully oriented.  Tr. 251.  Her CT scan showed no evidence of a pulmonary embolism.  Tr. 252-53.  Additionally, Plaintiff's chest x-ray was normal.  Tr. 254.

On May 10, 2005, Plaintiff underwent a pulmonary function test.  Tr. 248, 354.  The examining physician opined that Plaintiff exhibited a mild restrictive ventilatory defect, which was indicated by the mildly reduced forced vital capacity (FVC) in the presence of a normal total lung

capacity (TLC). Tr. 249. However, Plaintiff had normal diffusing capacity as demonstrated by normal values in relation to lung volume. Tr. 249. Post-bronchodilator testing failed to demonstrate a significant change in FVC, which indicates that Plaintiff may not benefit from continued bronchodilator therapy. Tr. 249.

Additionally, in May of 2005, Plaintiff had x-rays performed. Tr. 255-56. The x-rays showed no evidence of a fracture in Plaintiff's lumbar, dorsal, or thoracic spine. Tr. 255-56. Both the lumbar spine and dorsal x-rays demonstrated evidence of arthritic changes. Tr. 256.

On July 10, 2005, Plaintiff underwent a sleep study. Tr. 308-09. Plaintiff exhibited severe obstructive sleep apnea associated with sleep architecture disruption, oxygen desaturation, and snoring disorder. Tr. 308. However, use of a CPAC device improved Plaintiff's oxygen saturation, abolished her snoring, and returned her sleep architecture to normal. Tr. 309. Dr. Adrian M. Pristas, the treating physician, suggested that Plaintiff use a CPAC device, a sleep mask, and humidifier. Tr. 309. Additionally, Dr. Pristas suggested that a weight loss program would relieve some symptoms of the sleep apnea. Tr. 309. She recommended that Plaintiff avoid activity requiring heightened concentration, such as driving, until the condition was resolved. Tr. 309.

Plaintiff received treatment at Bayshore Hospital on two separate occasions in 2006. Tr. 362-67. On June 4, 2006, she received treatment for a laceration on her finger. Tr. 362. She was diagnosed with hypertension and right thumb laceration, for which she received stitches. Tr. 362. Additionally, on August 12, 2006, Plaintiff received treatment for left facial cellulitis, due to tooth pain. Tr. 369. She was treated with multiple antibiotics and prescribed home antibiotics for two weeks. Tr. 389-70.

## II.   STANDARD OF REVIEW

The Court's review is limited to determining whether the Commissioner's decision is based upon the correct legal standards and is supported by substantial evidence in the record as a whole. See 42 U.S.C. § 405 (g); see also Richardson v. Perales, 402 U.S. 389, 390 (1971).  A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., Williams v. Shalala, 507 U.S. 924 (1993).  Substantial evidence is defined as that quantum of evidence which a "reasonable mind might accept as adequate to support a conclusion."  Perales, 204 U.S. at 401 (quoting Consol.Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld.  42 U.S.C. § 405 (g).  "Substantial evidence" means more than "a mere scintilla."  Perales, 402 U.S. at 401 (quoting Consol. Edison Co., 305 U.S. at 229).  Some types of evidence will not be "substantial."  For example,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g. that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).  The ALJ must make specific findings of fact to support the ALJ's ultimate conclusions.  Stewart v. Sec'y of Health, Educ. and Welfare, 714 F.2d 287, 290 (3d Cir. 1983).  "Where the ALJ's findings of fact are supported by substantial evidence, the [reviewing court] is bound by these findings, even if [it] would have decided the factual inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001).  Thus, substantial evidence may

be slightly less than a preponderance.  Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988).

"The reviewing court, however, does have a duty to review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984)).  In order to review the evidence, "a court must 'take into account whatever in the record fairly detracts from its weight.'"  Id. (quoting Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)).  The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  As the Third Circuit has held, access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ. and Welfare, 567 F.2d 258, 259 (4th Cir. 1977)).

"[The reviewing court] need[s] from the ALJ not only an expression of the evidence []he considered which supports the result, but also some indication of the evidence which was rejected." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).  Without such an indication by the ALJ, the reviewing court cannot conduct an accurate review of the matter; the court cannot determine whether

11

the evidence was discredited or simply ignored.  See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112,

121 (3d Cir. 2000) (citing Cotter, 642 F. 2d at 705); Walton v. Halter, 243 F.3d 703, 710 (3d Cir.

2001).  "The district court . . . is [not] empowered to weigh the evidence or substitute its conclusions

for those of the fact-finder."  Williams, 970 F.2d at 1182 (citing Early v. Heckler, 743 F.2d 1002,

1007 (3d Cir. 1984)).

### III.    APPLICABLE LAW

#### A.    The Five Step Process

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382.  A claimant is

considered disabled under the Social Security Act if he or she is unable to "engage in substantial

gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than [twelve] months."  42 U.S.C. § 423(d)(1)(A).  A claimant bears the burden of

establishing his or her disability.  Id. § 423(d)(5).

To make a disability determination, the Commissioner follows a five-step process pursuant

to 20 C.F.R. §§ 404.1520(a) and 416.920(a).  Under the first step, the Commissioner must determine

whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b)

and 416.920(b).  Substantial gainful activity is work that involves doing significant and productive

physical or mental duties, and is done (or intended) for pay or profit.  20 C.F.R. §§ 404.1572 and

416.972.  If the claimant establishes that she is not currently engaged in such activity, the

Commissioner then determines whether, under step two, the claimant suffers from a severe

impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii) and  416.920(a)(4)(ii).

The severe impairment or combination of impairments must "significantly limit[] [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c). The impairment or combination of impairments "must have lasted or must be expected to last for a continuous period of at least 12 months."  20 C.F.R. §§ 404.1509 and 416.909.  If the Commissioner finds a severe impairment or combination of impairments, he then proceeds to step three, where he must determine whether the claimant's impairment(s) is equal to or exceeds one of those included in the Listing of Impairments in Appendix 1 of the regulations ("Listings").  20 C.F.R. §§ 404.1520(d) and 416.920(d).  Upon such a finding, the claimant is presumed to be disabled and is automatically entitled to benefits.  Id.  If, however, the claimant does not meet this burden, the Commissioner moves to the final two steps.

Step four requires the Commissioner to determine whether the claimant's RFC sufficiently allows her to resume her previous work.  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the claimant can return to her previous work, then she is not disabled and therefore cannot obtain benefits.  Id. If, however, the Commissioner determines that the claimant is unable to return to her prior work, the analysis proceeds to step five.  At step five, the burden shifts to the Commissioner, who must find that the claimant can perform other work consistent with her medical impairments, age, education, past work experience and RFC.  20 C.F.R. §§ 404.1520(g) and 416.920(g).  Should the Commissioner fail to meet this burden, the claimant is entitled to social security benefits.  20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

### B.     The Requirement of Objective Evidence

Under the Act, disability must be established by objective medical evidence.  "An individual

13

shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." Id. Specifically, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

Id.; see 42 U.S.C. § 1382c(a)(3)(A). Credibility is a significant factor. When examining the record:

> The adjudicator must evaluate the intensity, persistence and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities. To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. The requirement for a finding of credibility is found in 20 C.F.R. § 416.929(c)(4).

A claimant's symptoms, then, may be discredited "unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 416.929(b); see Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

## III.   DISCUSSION

On appeal, Plaintiff argues that the ALJ erred at the third and fourth steps of the sequential evaluation and, as a result, incorrectly denied her claims for SSI benefits. Pl. Br. at 27. First, Plaintiff argues that at step three the ALJ failed to consider the effect of obesity on Plaintiff's multiple impairments. Second, Plaintiff asserts that at step four the ALJ made inadequate findings regarding the credibility of Plaintiff's subjective complaints. Additionally, at the fourth step,

Plaintiff claims that the ALJ was required to obtain clarification to resolve inconsistent medical evidence. Plaintiff's arguments are without merit.

### A. Substantial Evidence Supports the ALJ's Determination that Plaintiff's Combination of Impairments Did Not Meet or Equal the Listings.

Plaintiff contends that the ALJ failed to combine her severe impairments and compare the joint effect of all impairments against one of the Commissioner's Listings to determine medical equivalence. Pl.'s Br. at 27-31. Specifically, Plaintiff asserts that the ALJ failed to consider the aggravating effect her obesity had on her severe impairments, as required by the Listings. Pl.'s Br. at 27-29. Substantial evidence in the record supports the ALJ's conclusion that Plaintiff's combined impairments do not meet or equal the Listings.

Although the Listings no longer evaluate obesity as an independent impairment, obesity continues to be relevant to an ALJ's disability determination. Portlock v. Barnhart, 208 F. Supp. 2d 451, 453 (D. Del. 2002). According to the Social Security Ruling ("SSR") 02-1p:

> Because there is no listing for obesity, [the ALJ] will find that an individual "meets" the requirements of a listing if he has another impairment that, by itself, meets the requirements of a listing. [The ALJ] will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing.

To meet the requirements of the Listings, a claimant's combination of obesity and other medically determinable impairments must "significantly limit[] an individual's physical or mental ability to do basic work activities." SSR 02-1p. The Listings specifically require that an ALJ consider any "additional or cumulative effects of obesity" in light of the disabling, medically determinable impairments often associated with obesity. 20 C.F.R. Subpart P. § 404, Appendix 1, §§ 1.00F,

15

300I, and 400F.  Specifically, obesity commonly leads to chronic diseases, including diabetes mellitus, hypertension, heart disease, peripheral vascular disease, and sleep apnea.  SSR 02-1p.

The ALJ correctly determined that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the Listings.  First, substantial evidence supports the ALJ's determination that the effects of Plaintiff's obesity on her individual impairments did not satisfy the Listings.  In making this determination, the ALJ compared each of the Plaintiff's severe impairments – non-insulin-dependent diabetes mellitus, chronic obstructive pulmonary disease, vision impairment – to the related listing.  Tr. 17-18.   The Plaintiff did not exhibit evidence of diabetic peripheral neuropathy in two extremities or diabetic acidosis on an average of once every two months and, therefore, the combined effects of Plaintiff's obesity and diabetes did not meet or equal the requirements of Section 9.08 of the Listings.  Tr. 17.  Nor did Plaintiff manifest the FEV-1 spirometric test values, chronic impairment of gas exchange, or arterial blood gas values necessary to equal the Listings for chronic obstructive pulmonary disease.  Tr. 18.  Additionally, Plaintiff's degree of contraction or loss of visual field efficiency did not qualify her for SSI benefits under the Listings for vision impairment.  Tr. 18.  Therefore, any aggravating effect Plaintiff's obesity had on an individual impairment was not sufficient to meet the Listings.

Plaintiff mistakenly claims that the ALJ failed to perform an individualized assessment of her obesity's impact on her other impairments.  Pl.'s Br. at 29.  The ALJ explicitly considered the Plaintiff's morbid obesity.  Tr. 18.  However, the ALJ concluded that there was "no evidence to demonstrate that any medical ailments alleged by the claimant [had] been caused or aggravated by the claimant's obesity sufficient to mandate a finding of 'disability.'"  Tr. 18 (emphasis added).  While Plaintiff correctly states that she demonstrated many of the ailments commonly associated

16

with obesity, Pl.'s Br. at 29-30 (citing SSR 02-1p), solely exhibiting obesity-related impairments is not sufficient. Rather, a claimant will only be found disabled if these obesity-related impairments meet or equal the Listings. See SSR 02-1p. As demonstrated above, substantial evidence supports the ALJ's determination that none of Plaintiff's impairments, obesity-related or otherwise, are sufficient to mandate a finding of disability.

Second, the ALJ properly concluded that the combined effect of Plaintiff's obesity on her other impairments did not prevent her from performing basic work. Tr. 18-21. Obesity does not correlate to any specific degree of functional loss, rather, an ALJ must determine whether obesity, in combination, "significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-1p. Only once this is determined will an ALJ find that a claimant's obesity, in combination, meets the Listings. Id. Here, the ALJ had substantial testimonial and medical evidence from which to determine that Plaintiff could do light work. See infra Part IV-C. Therefore, the ALJ acted within his discretion in concluding that Plaintiff's obesity in combination did not meet the Listings.

Next, Plaintiff argues that the ALJ acted improperly by relying on the fact that her several impairments did not produce dire consequences to discount the impact her obesity had on her other impairments. Pl.'s Br. at 30. In support of this contention, Plaintiff cites Nangle v. Heckler, where the Third Circuit held that the Act does not permit rejection of a disability claim simply because a claimant does not experience "significant end organ damage." Pl.'s Br. at 31 (citing Nangle v. Heckler, 598 F. Supp. 341, 343 (E.D. Pa. 1984) (internal citations omitted)).[3] While the ALJ did

_____

3

Additionally, this case is distinguishable from the present situation. In Nangle, the Third Circuit reviewed an ALJ's determination regarding the claimant's disabling alcoholic condition. 598 F. Supp. at 341. The Court concluded that

find it significant that Plaintiff did not require the use of insulin, multiple inpatient hospital admissions, or other radical medical intervention, Tr. 19, the ALJ did not rest his determination solely on this finding.  Rather, the ALJ consistently cited from the voluminous medical evidence and testimonial evidence to conclude that Plaintiff's impairments would not prevent her from performing basic work activities.  Tr. 18-21.  As a result, the ALJ correctly opined that Plaintiff's combination of impairments did not limit her ability to perform basic work.

### B. Substantial Evidence Supports the ALJ's Determination that Plaintiff's Subjective Complaints of Pain Were Not Credible

Plaintiff next argues that the ALJ failed to give serious consideration to her subjective complaints of pain. Pl. Br. at 31-35.  This contention is not supported by the record.  The ALJ properly considered Plaintiff's subjective complaints of pain, even though he discounted her credibility, on the basis that they were inconsistent with the RFC assessment, the objective evidence in the record, and Plaintiff's own statements. Tr. at 19-21.

"[W]hile an ALJ must consider a claimant's subjective complaints, an ALJ has discretion to evaluate the credibility of a claimant and arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant." Gantt v. Comm'r of Soc. Sec., 205 Fed. App'x 65, 67 (3d Cir. 2006) (citations omitted).  Allegations of pain and other subjective symptoms must be supported by objective medical evidence. Additionally, an ALJ is entitled to consider a number of non-medical factors in assessing Plaintiff's credibility pertaining to subjective complaints of pain, including: statements by Plaintiff, daily activities, and

---

end organ damage was not necessary to find that alcoholism was disabling.  Id. at 343.  Here, this Court reviews the ALJ's determination regarding whether Plaintiff's non-insulin-dependent diabetes mellitus, chronic obstructive pulmonary disease, and vision impairment meet or equal the Listings.  Tr. 17.

efforts to work.  <u>See</u> 20 C.F.R. §§ 404.1529 and 416.929.  "Once an ALJ concludes that a medical impairment that could reasonably cause the alleged symptoms exists, he or she must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work." <u>Hartranft v. Apfel</u>, 181 F.3d 358, 362 (3d Cir. 1999). "This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." <u>Id.</u>; <u>see also</u> 20 C.F.R. §§ 404.1529(c) and 416.929(c).

Here, the ALJ properly reviewed and analyzed Plaintiff's testimony concerning her pain and daily activities in light of the objective medical evidence in the record.  The ALJ first identified the seven factors for assessing a claimant's credibility as outlined by the Third Circuit in <u>Caruso v. Commissioner of Social Security</u>.  99 Fed. Appx. 376 (3d Cir. 2004).  In making a credibility determination, an ALJ must consider the Plaintiff's: (1) daily activities; (2) duration, location, frequency and intensity of pain; (3) precipitation and aggravating factors; (4) medication; (5) treatment other than medication; (6) other pain relief measures; and (7) other factors regarding functional limitations due to pain.  <u>Id.</u> at 380-81.  The ALJ, then, analyzed each of Plaintiff's alleged impairments utilizing these factors.  Tr. 19-21.  From this analysis, the ALJ correctly concluded that "[while] the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, . . . the claimant's statements concerning the intensity, persistence and limited effects of these symptoms are not entirely credible."  Tr. 19.

Substantial medical and testimonial evidence support the ALJ's determination that Plaintiff's subjective complaints of pain were not credible.  First, Plaintiff's own statements regarding her daily activities, medication, and functional limitations reinforces the ALJ's decision.  According to Plaintiff's testimony before the ALJ, Plaintiff takes care of her thirteen year old

daughter, Tr. 512-13, often cooks and does laundry, Tr. 512-13, and grocery shops for the family, Tr. 514-15. Additionally, Plaintiff exercises by walking around a track three to four times for a half hour a day. Tr. 206. She volunteers at her child's school, Tr. 206, and attends church on a weekly basis, Tr. 171. Although Plaintiff claims that her physical impairments prevented her from working at Prudential and Foodtown, Tr. 517, both her and her husband's testimony indicate that she was laidoff from both places of employment. Tr. 218, 505. Furthermore, Plaintiff has never received pain medication and solely uses Advil to relieve pain. Tr. 507.

Second, the overwhelming objective medical evidence confirms the ALJ's finding. While Plaintiff claims to experience difficulty with her grip and numbness in her hands, Tr. 512-13, multiple examinations of Plaintiff indicate that she has near full grip in both hands, Tr. 207, 224, 230-31. Additionally, Plaintiff has full range of shoulder motion and sensory function. Tr. 207, 224. Although Plaintiff alleges difficulty with standing and sitting for extended period of times, medical examiner Lawrence concluded that these complaints were not credible. Tr. 227. Furthermore, Plaintiff's sleep study indicated that her sleep apnea could be remedied through use of a CPAC device, sleep mask, and humidifier. Tr. 309. As a result, significant medical and testimonial evidence show that Plaintiff's ailments could not reasonably be expected to produce her alleged pain. Green v. Schweiker, 749 F.2d 1066, 1069-70 (3d Cir. 1984). Therefore, substantial evidence supports the ALJ's determination regarding Plaintiff's credibility.

## C.   Substantial Evidence Supports the ALJ's Determination that No Further Clarification Was Necessary to Determine Plaintiff's Residual Functional Capacity

Lastly, at step four, Plaintiff asserts that the ALJ erred by failing to resolve the conflicting and countervailing evidence in the record. Specifically, Plaintiff argues that the consultative

examiners did not complete Residual Functional Capacity reports, as required by the Listings, and that the ALJ made unsubstantiated judgments regarding Plaintiff's ability to perform light work. Neither of Plaintiff's contentions are persuasive.

First, Plaintiff asserts that a for a consultative examination to be utilized as evidence by an ALJ, the physician must include findings regarding the claimant's ability to work.  Pl.'s Br. at 37. Because Dr. Chudzik, Dr. Eatough, Dr. Dhamija, and Dr. Berg did not include RFC statements, Plaintiff erroneously asks this Court to discount the weight of their assessments.  Pl.'s Reply Br. at 1-10.  However, this Court has never held that an RFC is required from each physician.  Rather, the Listings specifically state that a "report should include . . . a statement about what [the claimant] can still do despite [his or her] impairment" but "the absence of such a statement in a consultative examination report will not make the report incomplete."  20 C.F.R. § 404.1519n(c)(6).  Therefore, this Court finds that the ALJ did not err in relying on the examinations performed by Dr. Chudzik, Dr. Eatough, Dr. Dhamija, and Dr. Berg.

Second, Plaintiff claims that the ALJ made unsubstantiated claims regarding the Plaintiff's RFC, in light of the fact that "[t]here is no evidence in the record that any doctor who examined Plaintiff at any time since her alleged onset date stated that she could work."  Pl.'s Reply Br. at 11 (emphasis omitted).  Yet, Plaintiff fails to recognize that a claimant bears the burden of establishing her own disability.  42 U.S.C. § 423(d)(5).  The correct inquiry focuses on whether any physicians concluded that Plaintiff was unable to work, which Plaintiff failed to establish in this case.  See Lane v. Comm'r of Soc. Sec., 100 Fed. App'x 90, 95-96 (3d Cir. 2004) (holding that a claimant cannot establish disability in the absence of evidence of any work-related functional limitations).

Furthermore, substantial evidence in the record supports the ALJ's determination that

21

Plaintiff could perform light work. Tr. 18-21. Plaintiff's treating physician, Dr. Chudzik, indicated that he could not classify Plaintiff as being disabled in 2001.[4] Tr. 210. Dr. Chudzik treated Plaintiff since 1992 for hypertension, hypothyroidism, and diabetes mellitus. Tr. 210, 262-90, 402-49. Additionally, numerous reports by consultative physicians support the ALJ's determination that Plaintiff was not disabled. Dr. Dhamija examined Plaintiff and concluded that, despite her morbid obesity, diabetes, hypertension, hypothyroidism, and kidney absence, Plaintiff was fully oriented, had full range of motion, and possessed nearly full grip strength. Tr. 207. Furthermore, Plaintiff's Residual Functional Capacity Assessment, completed on March 9, 2004, described her as having full motion in her knees and ankles, full grip strength, and normal chest and lungs. Tr. 224. From this, the medical examiner concluded that Plaintiff did not meet or equal the Listings and, therefore, could perform light work. Tr. 227. Dr. Fernando's findings also support the ALJ's determination. In a+-n Internal Medical Examination, Dr. Fernando concluded that Plaintiff appeared to be in no acute distress and could walk or rise from a chair without difficulty. Tr. 230. Lastly, x-rays performed in May of 2005 showed no evidence of a fracture in Plaintiff's lumbar, dorsal, or thoracic spine. Tr. 255-56. Thus, substantial evidence supported the ALJ's determination that the combination of Plaintiff's ailments did not significantly limit her ability to do light work.[5]

---

[4]

Plaintiff claims that there is no evidence to indicate that Dr. Chudzik knew the definition of "disability," as defined by the Act. Pl.'s Br. at 12 n.12. Plaintiff's argument is wholly unpersuasive. As a well-trained, experienced physician, Dr. Chudzik has likely performed numerous examinations for the Social Security Administration. Furthermore, even if Dr. Chudzik did use the term "disabled" under a different understanding, the ALJ did not solely rest his conclusion on this one report. Rather, the ALJ considered, described, and analyzed the voluminous medical examinations in the record and, ultimately, concluded that Plaintiff could perform basic work. Tr. 17-21.

[5]

In Plaintiff's Reply Brief, counsel asserts that the Defendant "has picked and chosen pieces of the reports of the medical sources in an attempt to mislead this Court." Pl.'s Reply Br. at 1. Then, Plaintiff devotes ten pages of her brief identifying evidence in the record that Defendant failed to cite, which highlight Plaintiff's ailments. Pl.'s Reply Br. at 1-10. However, this Court's inquiry is limited to inquiring whether the ALJ's factual determination is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). It is not for this Court to weigh the evidence or substitute its

## IV.   CONCLUSION

For the aforementioned reasons, this Court concludes that the ALJ's decision is **affirmed**.

An appropriate Order accompanies this Opinion.


 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Dated:        August    18  ,   2010
Original:     Clerk
cc:           All Counsel of Record
              File

---

conclusions for those of the ALJ.  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Therefore, the multiple reports of treating and consultative physicians finding that Plaintiff was not disabled are sufficient for this Court to uphold the ALJ's determination.